IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANNETTE L. MONTOYA,

    Plaintiff,

vs.                                                                                                1:20-cv-00212-LF

ANDREW M. SAUL, Commissioner
of the Social Security Administration,

    Defendant.

## **AMENDED MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff Annette L. Montoya's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum, filed on November 2, 2020. Doc. 23. Ms. Montoya's motion was fully briefed on January 14, 2021. *See* Docs. 25, 26, 27. The parties consented to my entering final judgment in this case. Docs. 4, 11, 12. Having meticulously read the entire record and being fully advised in the premises, I find that the Administrative Law Judge (ALJ) failed to properly weigh the opinion of Ms. Montoya's treating physician. I therefore GRANT Ms. Montoya's motion and REMAND this case to the Commissioner for further proceedings consistent with this opinion.

    I.    **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.     Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the

claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Ms. Montoya was born on July 5, 1959, is a high school graduate, and lives with her husband in Belen, New Mexico. AR 32, 57, 73–74, 215, 231.[3] Ms. Montoya has worked as a cook's aid, a convenience store manager, a hand packer, and a quality control inspector. AR 33–38, 61, 265. In November 2013, Ms. Montoya underwent a radical left nephrectomy.[4] AR 323–

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Document 20-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[4] A radical nephrectomy is a surgical procedure to remove a kidney. MAYO CLINIC, *Nephrectomy (kidney removal),* https://www.mayoclinic.org/tests-procedures/nephrectomy/about/pac-20385165 (last visited May 19, 2021*).* "During a radical nephrectomy, the urologic surgeon removes the entire kidney and often some additional structures, such as part of the tube that connects the kidney to the bladder (ureter), or other adjacent structures such as the adrenal gland or lymph nodes." *Id*.

26. In February 2014, Ms. Montoya underwent a laparoscopic cholecystectomy[5] and hernia repair. AR 411.

Ms. Montoya filed an application for Disability Insurance Benefits ("DIB") on January 26, 2017, alleging disability since February 28, 2014, due to rheumatoid arthritis in her back, arms, shoulders, and knees. AR 186–87, 214, 217. The Social Security Administration ("SSA") denied her claim initially and on reconsideration. AR 97–100, 106–09. Ms. Montoya requested a hearing before an ALJ. AR 110–11. On October 22, 2018, ALJ Michael Leppala held a hearing. AR 25–67. ALJ Leppala issued his unfavorable decision on April 15, 2019. AR 9–23. The ALJ found that Ms. Montoya met the insured status requirements of the Social Security Act through September 30, 2014.[6] AR 14. At step one, the ALJ found that Ms. Montoya had not engaged in substantial, gainful activity since February 28, 2014, her alleged onset date. *Id*. At step two, the ALJ found that, through the date last insured, Ms. Montoya "had the following severe impairments: disorders of the back—discogenic and degenerative; disorders of the gastrointestinal system (status post hernia repair); and chronic kidney disease (with removal of left kidney)." AR 14. At step three, the ALJ found that none of Ms. Montoya's impairments, alone or in combination, met or medically equaled a Listing. AR 15. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Montoya's RFC. AR 15–18.

---

[5] A cholecystectomy is a surgical procedure to remove the gallbladder. MAYO CLINIC, *Cholecystectomy (gallbladder removal)*, https://www.mayoclinic.org/tests-procedures/cholecystectomy/about/pac-20384818#:~:text=A%20cholecystectomy%20(koh-luh-,fluid%20produced%20in%20your%20liver (last visited May 19, 2021).

[6] The relevant time period for determining disability status is from the onset date though the date the claimant is last insured for disability benefits. *Hendron v. Colvin*, 767 F.3d 951, 953 (10th Cir. 2014); *Hill v. Astrue*, 289 F. App'x 289, 291 (10th Cir. 2008) (unpublished). The relevant time period in Ms. Montoya's case is the seven months between February 28, 2014 (her alleged onset date) and September 30, 2014 (her date last insured).

4

The ALJ found that through the date last insured, Ms. Montoya

> was capable of occasionally lifting and/or carrying twenty pounds; frequently lifting and/or carrying ten pounds; standing and/or walking for about six hours in an eight-hour workday; and sitting for six hours in an eight-hour workday, all with normal breaks.

AR 15. At step four, the ALJ concluded that Ms. Montoya was capable of performing her past relevant work as a quality control inspector. AR 18. The ALJ thus found Ms. Montoya was not disabled at step four.

Ms. Montoya requested that the Appeals Council review the ALJ's unfavorable decision. AR 182–85. On January 10, 2020, the Appeals Council denied the request for review. AR 1–6. Ms. Montoya timely filed her appeal to this Court on March 10, 2020. Doc. 1.[7]

### IV. Ms. Montoya's Claims

Ms. Montoya raises four main arguments for reversing and remanding this case: (1) the ALJ's RFC is not based on substantial evidence because he failed to account for her subjective allegations of pain and other symptoms; (2) the ALJ failed to properly weigh the opinion of her treating physician Roland K. Sanchez, MD; (3) the ALJ failed to develop the record regarding her mental functioning; and (4) the ALJ erred by finding that she could perform her past relevant work. Doc. 23. Because I find that the ALJ failed to properly weigh the opinion of her treating physician, Dr. Sanchez, I will not address the other issues because they may be affected by the Commissioner's treatment of this case on remand. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

---

[7] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 2.

V.     Analysis

Ms. Montoya contends that the ALJ failed to properly weigh the medical opinion of her treating physician, Dr. Sanchez. First, she argues that the ALJ failed to make any specific finding as to the deference to which the opinion is entitled pursuant to the "treating physician rule." Doc. 23 at 15–16. Second, Ms. Montoya argues that the ALJ failed to provide legitimate reasons for rejecting the opinion. Doc. 23 at 16–20. In response, the Commissioner asserts that Ms. Montoya is impermissibly asking the Court to reweigh the evidence in her favor, that the ALJ gave adequate reasons for the weight he assigned to Dr. Sanchez's opinion, and that Dr. Sanchez's opinion was inconsistent with other medical providers' findings. Doc. 25 at 10–16. Because I agree with Ms. Montoya that the ALJ failed to give legitimate reasons for discounting and rejecting her treating physician's opinion, I remand on that basis.

Treating physicians may offer a medical opinion regarding the claimant's symptoms, diagnosis, and prognosis, as well as work-related physical and mental limitations. *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (citing 20 C.F.R. § 404.1527(a)(2)). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1) (effective March 27, 2017).[8] Generally, an ALJ should "give more weight to opinions from [claimant's] treating sources." *Watkins*, 350 F.3d at

---

[8] The filing date of a claim determines which set of rules apply when evaluating medical and nonmedical evidence in a claim. Because Ms. Montoya filed her claim before March 27, 2017, the rules in § 404.1527 apply. *See* 20 C.F.R § 404.1527 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply."). When citing to the Code of Federal Regulations ("C.F.R."), the Court cites to the sections that apply to claims filed before March 27, 2017.

6

1300. "In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for 'controlling weight.'" *Id*. Only opinions from "acceptable medical sources" can be considered treating sources whose medical opinions may be entitled to "controlling weight." *See* 20 C.F.R. § 404.1527(c). A licensed physician is an acceptable medical source. *See* 20 C.F.R. § 404.1513(a)(1) (effective September 3, 2013 to March 26, 2017).

In analyzing whether a treating source opinion is entitled to controlling weight, the ALJ must perform a two-step process. First, the ALJ must consider whether the opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2) (effective August 1, 2006 to November 11, 2010)[9]; *Watkins*, 350 F.3d at 1300). If the opinion meets both criteria, the ALJ must give the treating source's opinion controlling weight. *Id*. To give anything less than controlling weight, the ALJ must demonstrate with substantial evidence that the opinion (1) is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," or (2) is "inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not assign a treating source's opinion controlling weight, step two of the analysis requires the ALJ to apply the six factors listed in the regulations to determine whether a treating source's opinion should be rejected altogether or assigned some lesser weight:

1. **Examining relationship**: more weight is given to the opinion of a source who has examined the claimant than to one who has not;
2. **Treatment relationship**: more weight is given to the opinion of a source who has treated the claimant than to one who has not; more weight is given to the opinion of a source who has treated the claimant for a long

---

[9] The version of the regulations relevant to Ms. Montoya's claim contains this same language in 20 C.F.R. § 404.1527(c)(2).

      time over several visits and who has extensive knowledge about the claimant's impairment(s);
3. **Supportability:** more weight is given to a medical source opinion which is supported by relevant evidence (such as laboratory findings and medical signs), and to opinions supported by good explanations;
4. **Consistency:** the more consistent the opinion is with the record as a whole, the more weight it should be given;
5. **Specialization**: more weight is given to the opinion of a specialist giving an opinion in the area of his/her specialty; and
6. **Other factors:** any other factors that tend to contradict or support an opinion.

*See* 20 C.F.R. §§ 404.1527(c)(1)–(6); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Watkins*, 350 F.3d at 1301. As the first two factors make clear, even if an ALJ determines that a treating source opinion is not entitled to controlling weight, the opinion still is entitled to deference. *Watkins*, 350 F.3d at 1300.

      An ALJ is not required to expressly analyze each of the six factors. *Oldham*, 509 F.3d at 1258. However, "[u]nder the regulations, the agency rulings, and our case law, an ALJ must give good reasons in [the] notice of determination or decision for the weight assigned to a treating [source's] opinion." *Watkins*, 350 F.3d at 1300 (internal quotation and citations omitted); *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003); 20 C.F.R. § 404.1527(c)(2) (effective March 27, 2017). The reasons must be "tied to the factors specified in the cited regulations" and must be "sufficiently specific." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011); *see also* 20 C.F.R. § 404.1527(c)(2) (effective March 27, 2017). "[I]f the ALJ rejects [an] opinion completely, he must then give specific, legitimate reasons for doing so." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting *Watkins*, 350 F.3d at 1301).

      Dr. Sanchez treated Ms. Montoya from January 2014 through December of 2016. AR 348–95, 412–16. Dr. Sanchez treated Ms. Montoya three times within the relevant time period: on January 24, 2014, and February 18, 2014, for back pain, and again on June 2, 2014 for

8

allergies and back pain. AR 393–95, 412–16. During the January 2014 appointment, Dr. Sanchez noted that Ms. Montoya was experiencing "pain with lifting heavy objects," "pain with sitting," joint pain, muscle pain, and back pain. AR 415. Dr. Sanchez further noted that upon examination, Ms. Montoya had "stiffness, [was] tender to palpitation and [had] spasms present" in her thoracic spine and lumbar spine as well as restricted motion in her lumbar spine. AR 416. Dr. Sanchez diagnosed Ms. Montoya with thoracalgia, prescribed hydrocodone with acetaminophen, and ordered an MRI. *Id*.

At the February 2014 appointment, Dr. Sanchez again noted that Ms. Montoya complained about back pain. AR 412. His physical examination revealed that she was tender to palpation and had restricted motion in her thoracic spine. AR 413. Dr. Sanchez diagnosed Ms. Montoya with a "[b]ulge of thoracic disc without myelopathy," prescribed oxycodone-acetaminophen, and referred her to physical therapy. *Id*.

Although Ms. Montoya's chief complaint was allergies at the appointment on June 2, 2014, Dr. Sanchez noted her complaints of back pain and found her thoracic spine to be "tender to palpation" with "restricted motion." AR 393–94. Dr. Sanchez's diagnosis of a bulge in Ms. Montoya's thoracic spine did not change from the appointment four months prior. AR 394. Dr. Sanchez continued Ms. Montoya's prescription for oxycodone-acetaminophen and added baclofen for muscle pain.

Dr. Sanchez offered two medical opinions about Ms. Montoya's abilities, one in April of 2017, and one in August of 2018. AR 625–29. On April 28, 2017, Dr. Sanchez opined that due to chronic osteoarthritis, Ms. Montoya could never lift or carry up to 10 pounds. AR 625. She could sit for 3 minutes, stand for 15 minutes, and walk for 20 minutes in an eight-hour workday. *Id*. Further, Dr. Sanchez opined that Ms. Montoya could occasionally reach, handle, and finger

9

with both her right hand and left hand, but never push or pull with either hand. *Id*. Dr. Sanchez opined that Ms. Montoya could occasionally operate foot controls, climb stairs and ramps, balance, stoop, kneel, and crouch. AR 626. With regard to non-physical abilities, Dr. Sanchez opined that Ms. Montoya was markedly limited in the following abilities:

1) maintain attention and concentration for extended periods;
2) perform activities within a schedule;
3) maintain regular attendance and be punctual within customary tolerance;
4) maintain physical effort for long periods without a need to decrease activity or pace; or to rest intermittently;
5) work in coordination with/or in proximity to others without being distracted by them;
6) complete a normal workday and workweek without interruptions from pain or fatigue based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods.

AR 627.[10]

In August 2018, Dr. Sanchez opined that because of Ms. Montoya's fibromyalgia, depression, anxiety, and chronic pain, she could occasionally lift and/or carry less than five pounds, stand and/or walk less than two hours and sit less than four hours in an eight-hour workday. AR 628. Dr. Sanchez opined that Ms. Montoya could never reach overhead, handle, finger, push/pull, or use a keyboard, but could occasionally reach at and below shoulder level and occasionally operate foot controls. *Id*. She could never kneel, stoop, crouch, or crawl. *Id*. Dr. Sanchez found that in August of 2018, Ms. Montoya had the same marked limitations in her

---

[10] Many of the mental abilities that Dr. Sanchez determined Ms. Montoya was markedly limited in are mental abilities needed to perform any job: the ability to maintain concentration and attention for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in coordination with or proximity to others without being (unduly) distracted by them; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *See* Program Operations Manual System (POMS) 25020.010(B)(2)(a).

non-physical work-related activities as she did in April of 2017.[11]  AR 629.

There is no dispute that Dr. Sanchez is Ms. Montoya's treating physician. *See* Doc. 25 at 10–11.  Ms. Montoya correctly points out that the ALJ did not perform the "controlling weight" analysis required by the treating physician rule.  *See generally* AR 12–18.  In evaluating Dr. Sanchez's opinion, the ALJ failed to complete either step of the treating physician analysis. With respect to the first step of the treating physician analysis, the ALJ's decision contains no discussion as to whether Dr. Sanchez's opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques" or whether it "is consistent with the other substantial evidence in the record."  *Pisciotta*, 500 F.3d at 1077.  The ALJ mentions that Dr. Sanchez's opinion "sharply contrast[s] with the evidence as a whole," AR 17, but does not determine whether the opinion is entitled to controlling weight.  Thus, the ALJ did not complete the first step of the treating physician analysis.

Tenth Circuit precedent suggests that an ALJ's failure to complete the first step of the treating physician analysis does not always require remand.  Some cases have held that an ALJ's failure to complete the first step is legal error which requires remand.  *See Watkins*, 350 F.3d at 1300 ("A finding at this stage (as to whether the opinion is either unsupported or inconsistent with other substantial evidence) is **necessary** so that we can properly review the ALJ's determination on appeal.") (emphasis added); *Chrismon v. Colvin*, 531 F. App'x 893, 901 (10th Cir. 2013) (unpublished) ("Explicit findings properly tied to each step of the prescribed analysis facilitate meaningful judicial review" and are required to avoid remand.); *see also Robinson*, 366 F.3d at 1083 (finding error where "[a]lthough it [was] obvious from the ALJ's decision that he

---

[11] The ALJ does not differentiate between Dr. Sanchez's two opinions and weighs them together. AR 17.  The Court will refer to Dr. Sanchez's two opinions together in the singular as "Dr. Sanchez's opinion."

did not give [the treating source's] opinion controlling weight, the ALJ never expressly stated that he was not affording it controlling weight, nor did he articulate a legitimate reason for not doing so"); *Daniell v. Astrue*, 384 F. App'x 798, 801 (10th Cir. 2010) (unpublished) (quoting *Watkins*, 350 F.3d at 1300). Other cases have held that an ALJ's failure to explicitly state whether a treating physician's opinion is entitled to controlling weight is *not* legal error requiring remand. *See Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) ("Ms. Mays argues that the ALJ did not expressly state whether he had given Dr. Chorley's opinion 'controlling weight.' But the ALJ implicitly declined to give the opinion controlling weight. Because we can tell from the decision that the ALJ declined to give controlling weight to Dr. Chorley's opinion, we will not reverse on this ground."); *Causey v. Barnhart*, 109 F. App'x 375, 378 (10th Cir. 2004) (unpublished) ("Implicit in the ALJ's decision is a finding that Dr. Waldrop's opinion . . . is not entitled to controlling weight."); *see also Andersen v. Astrue*, 319 F. App'x 712, 721 (10th Cir. 2009) (unpublished) ("It is apparent that the ALJ concluded that these opinions were not entitled to controlling weight. Although ordinarily the ALJ should have made explicit findings to this effect, . . . we are not troubled by the substance of the ALJ's determination.").

The Court, however, need not decide in this case if the ALJ's failure to complete the first step of the treating physician analysis is legal error. This is because the ALJ failed to give specific, legitimate reasons for rejecting Dr. Sanchez's medical opinion. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) ("according little weight to" an opinion is the same as "effectively rejecting" it).

The ALJ gave two reasons for giving Dr. Sanchez's opinion "little weight." Neither reason, however, is sufficient. The first reason the ALJ gave for rejecting Dr. Sanchez's opinion is that it "sharply contrast[s] with the evidence as a whole." AR 17. The only support the ALJ

12

provided for this reason was that "Dr. Sanchez stated the Claimant could never lift or carry ten pounds and could only sit for three minutes total in an eight-hour workday. This contrasts with his examination findings from June 2, 2014, which indicated the Claimant had normal cervical spine range of motion; good muscle strength." AR 17. The ALJ does not provide any other examples of how Dr. Sanchez's opinion is inconsistent with the evidence as a whole. The ALJ's reason, however, is not supported by substantial evidence.

During the relevant time period, Ms. Montoya never complained about, nor was she diagnosed with, problems with her cervical spine. Instead, at the June 2, 2014 appointment, Dr. Sanchez noted Ms. Montoya's complaints of back pain and found her **thoracic** spine to be "tender to palpation" and with "restricted motion." AR 393–94. The notes of other appointments in the relevant time period also indicate an impairment in Ms. Montoya's thoracic spine. AR 413, 416. In January of 2014, Dr. Sanchez noted that upon examination, Ms. Montoya had "stiffness, [was] tender to palpitation and [had] spasms present" in her thoracic spine and lumbar spine as well as restricted motion in her lumbar spine. AR 416. Similarly, in February of 2014, Dr. Sanchez's physical examination revealed that Ms. Montoya was tender to palpation and had restricted motion in her thoracic spine. AR 413. In the notes during the relevant time period, Dr. Sanchez does not mention issues with Ms. Montoya's cervical spine. To support his conclusion, the ALJ clearly cherry-picked and selected irrelevant pieces of Dr. Sanchez's treatment records, while ignoring the rest. This is not permitted.

An ALJ is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). An ALJ is required, however, to discuss uncontroverted evidence not relied upon and significantly probative evidence that he or she rejects. *Id*. at 1010. "It is improper for the ALJ to pick and choose among medical reports, using portions of evidence

favorable to his [or her] position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). This is precisely what occurred here. The ALJ's reasoning that Dr. Sanchez's opinion is not consistent with his examination findings is not supported by the record and is not a legitimate reason for rejecting it.

The second reason the ALJ gave for rejecting Dr. Sanchez's opinion was that it was "submitted multiple years after [Ms. Montoya's] date last insured." AR 17. The relevant analysis for an ALJ is whether the claimant was disabled before her date last insured, not after. *See Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348–49 (10th Cir. 1990). A medical opinion authored after the date last insured, however, sometimes bears on the nature and severity of a claimant's condition within the relevant period. *See, e.g.*, *Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004) (holding that the ALJ erred by neglecting to discuss an RFC evaluation authored by a treating source after the claimant's date last insured where the evaluation covered the relevant period); *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 479 (10th Cir. 1993) (reasoning that evidence that bears upon a plaintiff's condition after his date last insured is "pertinent evidence" that may "disclose the severity and continuity of impairments existing before the earning requirement date"). Here, Dr. Sanchez was asked to consider Ms. Montoya's medical history and the chronicity of findings from before and during the relevant time period. AR 625, 627–29. Although Dr. Sanchez's opinion was made several years after the date last insured, he was Ms. Montoya's treating physician during the relevant time period and would have been able to shed light on her condition during that time. Consequently, the ALJ's reason—that Dr. Sanchez's opinion was authored after the date last insured—is not a legitimate reason for rejecting Dr. Sanchez's opinion.

In an attempt to salvage the ALJ's reasons for rejecting Dr. Sanchez's opinion, the Commissioner offers explanations that were not provided by the ALJ. It is not enough for the Commissioner to "suppl[y] some reasons that it believes would support the ALJ's RFC finding" if the "ALJ did not provide these explanations" himself. *Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007). "[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Id*. at 1207–08 (citations omitted).

With respect to the first reason for rejecting Dr. Sanchez's opinion, the Commissioner argues that the ALJ properly found that the "extreme limitations" offered in Dr. Sanchez's opinion are not consistent with the other record evidence. Doc. 25 at 10–16. The Commissioner, however, provides a much more thorough assessment of the evidence than the ALJ did in his decision. For example, the Commissioner argues that Dr. Sanchez's April 2017 opinion was internally inconsistent. *Id*. at 11. The Commissioner points out that Dr. Sanchez opined that Ms. Montoya could only [sit] for three minutes, stand fifteen minutes, and walk for thirty minutes, but he also opined that she could "occasionally" climb stairs and ramps, balance, stoop, kneel and crouch.[12] *Id*. To the extent these statements are inconsistent, the ALJ did not mention this particular inconsistency in his decision when addressing the weight given to Dr. Sanchez's opinion. *See* AR 17. Instead, the ALJ only said that Dr. Sanchez's opinion "contrasts with his examination findings from June 2, 2014, which indicated the Claimant had normal cervical spine range of motion; good muscle strength." AR 17. The Commissioner also points out that in June 2014, Dr. Sanchez's objective examination showed that Ms. Montoya "was in no acute distress; had normal head and neck movement without pain; and had normal cervical spine and lumbar

---

[12] The form defines "occasionally" as "very little to one-third of the time." AR 626.

15

spine functioning, although she had tenderness in her mid-back (thoracic spine) with some restricted motion. Nevertheless, she had good muscle coordination and strength." Doc. 25 at 13. Again, the ALJ did not mention these alleged inconsistencies in his decision.

To explain the ALJ's second reason for rejecting Dr. Sanchez's opinion, the Commissioner argues that the ALJ's "common-sense observation" that Dr. Sanchez's opinion was submitted several years after the date last insured was reasonable "because Dr. Sanchez failed to identify which of his treatment notes from the relevant period supported his opinion, let alone give any other explanation for the basis of his findings other than identifying the underlying impairment by name." Doc. 25 at 14–15. The Commissioner further criticizes Dr Sanchez for failing "to provide a supporting explanation showing how that period-relevant evidence supported his opinion." *Id.* at 15. Once again, the ALJ did not provide this explanation in his decision. The Court will not adopt the Commissioner's post-hoc rationalizations because they are not apparent from the ALJ's decision in this case.

The Commissioner cites to *Endriss v. Astrue*, 506 F. App'x 772 (10th Cir. 2012) (unpublished) in support of his argument that an ALJ is not required to recite evidence previously discussed in his decision when later rejecting a treating source's opinion. *See* Doc. 25 at 14. In *Endriss*, the court held that the ALJ was not required to reiterate the objective medical evidence on which he relied to reject one treating source's opinion when he already had summarized that evidence in rejecting another treating source's "virtually identical" opinion. *See* 506 F. App'x at 776–77. Unlike *Endriss*, this case does not involve two identical opinions to which the ALJ can apply one reasoning to discredit both. Instead, in this case there is no clear link between the ALJ's previous recitation of medical evidence and the reasons the ALJ rejected Dr. Sanchez's opinion. Remand is required.

16

## VI. Conclusion

This case does not involve a difference of interpretation, as the Commissioner argues. The ALJ erred by failing to conduct a proper treating physician analysis of the opinion of Dr. Sanchez. The Court remands so the Commissioner can properly assess Dr. Sanchez's opinion. The Court does not reach Ms. Montoya's other claimed errors, as they "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 23) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent